And call our next case Kanikal v. Attorney General. Judge Snygard, I'm going to speak up if you, we're running roughshod over the No, I'll make myself known if I have a question. Thank you. Thank you. Ms. Cohen, are you ready? Morning. May it please the court, my name is Faye Reva Cohen. I'd like to introduce one of my associates who has assisted me in this matter, Mr. Shanshaw. As this matter has been briefed three times by both parties, I believe the legal issues are pretty clear. The issues have morphed over time. What is it? The issues have morphed over time. They have morphed over time and I'd like to incorporate the entire argument and briefs of the Howard v. Pritzker case because I think they're very excellent. And our particular history in this case is limited because although Dr. Kanikal, he's currently a psychiatrist working for the State Department of Corrections in Florida, had other attorneys in the process, by the time we got involved and the case was brought in the Western District, he had been period of time. So we were brought in on a pro hoc v-shaped basis very soon before the motion to dismiss had to be responded to. All right. Well, what's your position here with respect to the issues before us? Are you taking a position that 2401A does not apply? Are you taking a position that if it applies, it's not jurisdictional? Let's get to the heart of the matter. Okay. I'm taking all those positions. I think there are various arguments. I've been an attorney for 40 years. About 38 of those years I've been practicing civil rights law. I've been before the EEOC, before the PHRC, before the court system. Where does that take us? That takes us to the point that I know how these things actually work in practical circumstances. Dr. Kanikal did everything he could do to abide with the system. There's a page and a half of single-spaced pages based on the history of what he did. Well, what he's required to do is file within a certain amount of time. He's supposed to get the process started. Correct. And after that, it's really up to the government to keep it moving. Is that not correct? That's correct. But what we're seeing here is a concerted effort by the government to create a statute of limitations, which is not part of the scheme that was envisioned. Well, it may not be part of the scheme, but it's pretty categorically stated in the United States Code. No case shall be brought against the United States after six years. Why does that not apply? Number one, it doesn't apply in the actual practice of law in this area, in this district. It doesn't apply in the state. We have never seen it. We have never seen this apply. This is a fairly new theory, I think, that the U.S. Attorney and this is what the- But we can't write an opinion saying we've never seen this. Tell me how the statute, the case law points in the direction you want us to. Okay. Title- First of all, did you reserve rebuttal time? Two minutes. Yes, I did. Thank you. Title VII has a very specific scheme, which I don't have to repeat, about the deadlines that a claimant has to undertake when a case is filed. At that period of time, the claimant has the opportunity to remain in the administrative process for a period of time or remove it into a court. Congress did not intend that every claimant, and many of them are pro se litigants, rush to court immediately 180 days after a case is filed. That's clear, and we've read the statute. Okay. We've read carefully 2000E-62C. Yes, yes, yes. And there is an elaborate process there, and I don't hear the government taking a position that there isn't a process there. The argument they're making and the one we need you to respond to is the United States also, through the Congress, spoke and set a hard outside deadline, that the sovereign does not want to be sued after six years, period. And that's the nature of 2401A. It's a hard stop, and it modifies everything. What's your response? My opinion is 2401A does not apply to these cases because there is a conflict with Title VII cases. It is an irreconcilable conflict for Title VII statutes of limitations. And based on- Identify that now. We need you to be specific. What's the irreconcilable conflict that you want? The irreconcilable conflict is that in Title VII there is no end limit in which someone has to litigate a matter, bring it into court. Well, there is. They can do it until final agency action and then have to do something within 90 days. Isn't that correct? Well, that's another work of art and term of art. What is final agency action? In Mr. Canicle's case, there wasn't a final agency action. Right. Exactly. Which would then say, I mean, to your point, then the time limit hasn't expired. That's to my point. My point is also if the time limit has expired and assuming that 2401A is applicable, the time limit was to start when the Department of Justice told Mr. Canicle that his case was no longer stayed and the judge could now issue a decision before the EEOC, and that was within five years of when he brought suit.  You've said that there is, in effect, if I understand your response to Judge Rendell, there is, in effect, an end point. It may be indeterminate, but there is an end point based on final agency action. But what about a case where the EEOC, you're waiting on something from the EEOC, the language, and this is, I'll take it to the specific language of the statute here, it talks about within 90 days of receipt of notice of final action and then lists until such time as final action may be taken by a department, agency, or unit. It doesn't say or the EEOC. So is it theoretically possible that if you're waiting on the EEOC, there is no end time, none at all? Normally there's an end time for most cases with the EEOC, but in this case it was final agency action and the agency involved was the Department of Corrections and the Department of Justice had some class action issue pending with Department of Corrections employees and they told Mr. Canicle in November 2007, you can now proceed. That's final agency action. I believe that's the date, even if 2401 was applicable, which we don't agree it is, but if it was applicable, that is the date his statute should have begun to run, that six-year statute, and he was within that time frame. I mean, we have to look at these matters individually because every case is different. Now, federal employees have far greater rights than any employees. No private employee has the ability to go back and forth and back and forth through the EEOC process. Federal employees do. And you went through that process, your client did, and at one point signed a waiver and that waiver was litigated in front of the MSPB and the Merit Systems Protection Board said that's a valid waiver, you're stuck with it, we don't have further jurisdiction here. That was appealed to the federal circuit. The federal circuit agreed with the Merit Systems Protection Board. So how is it that we're not just looking at race judicata and that everything that happened after that was the EEOC off track? Because the EEOC assumed jurisdiction of the matter after that decision. And you put your finger exactly on my question. Okay. Who is it at the EEOC that has the right to say to the federal circuit, you don't know what you're talking about, that's no waiver? It was litigated and you lost. Okay. The issues, first of all, that last chance agreement, I call them the kiss of death, I don't know one employee who has survived a last chance agreement. Okay. But he signed a last chance agreement because he said you're going to be terminated if you don't sign the last chance agreement. There was the contention that, I'm just going back over the previous arguments, which you're going to say, your honor, well, it doesn't matter because the court overruled them. Yeah. Precisely. So what you need to get to is, what is it about this waiver, if anything, that allows you to say, not race judicata? You are not permitted to give away preemptively your civil rights. That's not really answering my question. Because even if the federal circuit and the MSPB were wrong, we've never said that being wrong is enough to initiate race judicata and collateral estoppel. We can assume that they're wrong and that the EEOC was completely right, that they shouldn't have done what they did, but they did what they did. And that doesn't answer, so you're not getting at the nub of the problem here. I really want you to meet this argument that the other side has put forward. Why is that waiver no good? Why is the waiver not good or why do I feel the court made a wrong decision in deciding? Whether you think they made a wrong decision or I think they made a wrong decision is of no moment. If you've got a legal argument that says, even accepting what the federal circuit did, we're still entitled to have pursued this because of X, Y, and Z. That's what I'm hoping to hear from you. I may not get where you want me to go, but a last chance agreement does not encounter anything regarding the rights provided under Title VII for an employee. So every employer could tell an employee under collective bargaining agreement, sign this document to never assert your civil rights in the future. Sure, but you're just inviting us to say, oh, federal circuit, you should have seen that, which we're not entitled to do, right? I don't agree because I feel that they considered it from the contractual issues and employees covered by collective bargaining agreement who signs an agreement. But it is possibly required to comply with that agreement. But what happened in that agreement is the agency broke that agreement. That was litigated. Why would the EEOC assume the case if there was no case? Exactly my question. That is exactly the question I'm hoping to hear. I believe the EEOC assumed the case because Mr. Canico had contacted them before signing the last chance agreement. And they decided at some point that earlier contact took precedence over the last chance agreement.  There is language in that waiver that is time limiting. It says until June 2, 2000, I think is the date. I don't have it right in front of me. That I'm waiving my grievance and appeal rights until that date. Does the fact that that's time limited mean anything? Should it mean something to us? If an employee is given an agreement that says you're going to be fired today or you signed this agreement, that is different than that is a contractual issue under collective bargaining law and under the employee at will doctrine which applies in Pennsylvania. I don't know why the EEOC assumed the case. If they felt that the case was still valid and viable, I'm not here to say they were wrong. It's very hard to get them to assume things. Is the date limiting? I feel that no. I don't feel that that agreement was valid with regard to Title VII issues. And I don't think the courts that reviewed it considered the Title VII issues. Well, the district court didn't decide this, did it? This particular issue? I don't believe so. They just decided they didn't have jurisdiction. Judge Gibson? Frankly, if we would have had time for an oral argument and were provided, we were only told to pick a mediator and one was set and then this decision came down. So, no, none of these arguments were really brought to the floor. All right. We'll hear from you on rebuttal. Thank you. Good morning. I'm Stephanie Marcus from the Department of Justice, and I represent Eric Holder, Attorney General of the United States. In this case, as an initial matter, this court need not reach the issue of whether 2401 applies to Title VII because it was waived. It was raised in district court. But this is a matter of jurisdiction. I mean, you know, even the Supreme Court in the Sand case, you know, we're not going to be denied the ability to look at something as essential as jurisdiction because it wasn't raised. It really goes to the heart of the case, doesn't it? We wanted to preserve that argument. You did. Consider it preserved. And in addition, it does not need to reach the issue and may affirm on the alternative grounds that the settlement agreement bars the claim. But we don't have the district court didn't decide that. We review what the district court did, don't we? You can affirm. We cited cases in our brief that show that any ground that is supported by the record, and this not only is supported by the record, but it was fully briefed below. And the district court, because we believe the district court correctly held that lack of jurisdiction didn't reach this issue. However, this court can affirm on alternative grounds. Yeah, but maybe you would answer what I was trying perhaps inartfully to put to Ms. Cohen, and that is does the date limitation on this, I mean, the government drafted this thing. He didn't draft it. They presented him with a drafted document, right? And it had in it, you're waiving your grievances and appeal rights until a certain date. You didn't have to put the date in, but you did. Adding that date in, is that a meaningless measure? I mean, doesn't the fact that that date is in there mean that in effect, you're agreeing to suspend your appeal rights, not that you're waiving them, but you're agreeing to suspend them until a date certain in the future? No, Your Honor, for two reasons. One is, again, he already had the chance to litigate the validity of the agreement, the federal circuit from the MSPB. The argument with respect to that date would be the same. No, no, no. Hold on. Just a second. When you say that would be the same, in your briefing, you acknowledge that he brings this appeal after the cutoff date in the settlement agreement. He brings this appeal forward post-June 2, 2000. He brings his lawsuit and his appeal. He brings it after the, by the terms of the settlement agreement. He's no longer under the waiver or the suspension of his rights. What the date is tied to and what the agreement reflects is that he waived any right to appeal the underlying challenge. If that's true, then the date is meaningless. Right? I mean, why say June 2, 2000 if what you really mean is you're done completely, period. If you look at the amended complaint, there is no allegation of discrimination past the June 1999 termination date and the date of the agreement. So you're saying the date has to do with events arising after a certain time? Yes, and that there's any administrative appeal, whether it be, and actually there is a jurisdictional prerequisite of going to the EEOC or the MSPB first if you're going to come to court on a Title VII action or in a mixed case under the CSRA. Well, hold on just a second because that's an unusual, that strikes me as a little bit of a difficult interpretation of it because it says, as to these underlying charges, that's the language, relating to the underlying charges in this matter, quote, unquote, you waive, quote, for a period ending June 2, 2000. Why doesn't that language mean that as to the underlying matters, you waive until June 2, 2000? So that then they spring up again. Yeah, which is why it's not, which is why waiver is an odd word, but it really looks like you're saying you suspend your rights. But there is no way he could have timely challenged that 1999 termination any time after that date. He did. Well, wait a second. So then what you're saying is you pulled a fast one on him? No. Look at this. You sign this, it'll come back to life at June 2, 2000, but there's no way you can actually do it. Your Honor, he was, as the MSPB found and as affirmed by the Federal Circuit, he had a union representative the entire time. He had a chance to review the agreement, make suggestions. This was the – Wait a second. Ms. Marks, are you saying it's okay that we fooled him because he had a lawyer? I mean, the language, it's got to mean something. No, I'm saying we didn't fool him, that this was the clear intent of the agreement. That was the whole point of this, is that otherwise the agency wouldn't get consideration for their decision. It's not just to hold in abeyance the termination. The decision was made. They gave him a program to try to improve his job performance. So why isn't that consideration? Why wouldn't it be full consideration on both sides to read this as not being a waiver but being a suspension of rights, that you don't mess with us until June 2, 2000, and we give you a certain period of time to make up your job performance and lift yourself up to a level we're comfortable with, and we're both sort of standing still on that, fighting about previous things, and we go forward. Why isn't that a consistent way to read this document's language with the notion of consideration? Again, because the only way the agency had made actually the decision back in February, well, before this was assigned to T, Dr. Hanekal had gotten a letter saying the agency had made the decision to terminate him, and then it was when it made the final decision to do so, the exchange there is that if we're going to give you another chance at this, you're not going to challenge what underlies this employment action. If there was a few – let's say he – But that isn't what you said. That may have been what you meant, but here's the problem I'm having, Ms. Marcus. That's not what this document says. Paragraph 7 says what I just quoted to you. So if you've got language in this document that you can point to that says, when we said, as to the underlying charges, you won't do anything for a period ending June 2, 2000, what we really meant was, as to the underlying charges, you'll never do anything, period. I'd like you to direct me to that language. Otherwise, I'm looking at paragraph 7, and I'm trying to figure out what it means if it doesn't mean a suspension of rights. And I could be wrong. I could easily be wrong. But I've spent some time puzzling over this, and I'm having a hard time coming up with anything other than this amounting to a suspension of rights. I think when the language that you're referring to, it says very broadly, the employee agrees to waive any and all appeal and grievance rights relating to the underlying charges proposed in this matter on February 2, 1999. And I don't think that date was intended in any way to limit that phrase in the same paragraph. What does it mean? It was intended to, again, because any kind of appeal of the underlying conduct would have to be filed within that time period. I think it was intended to show precisely that he wasn't waiving prospective rights if he had successfully fulfilled the program and the requirements of the agreement, if his medical privileges had been restored, and then something else had happened. He was reinstated. I think we've probably done what we can do with this. Okay. Yes, Your Honor. Let's get back to the 2401 and the application of it. You know, there is a specific scheme in Title VII, and Judge Edwards in the argument in the D.C. Circuit was incredulous. He was blown away by the concept that you incorporate a six-year statute when what really is happening here is that the agency is taking time doing this, and by virtue of the time that it's being taken, the person is put to Hobson's choice of, you know, awaiting agency action at the risk of losing the cause of action that's given under Title VII. How can it be that there's an outside six-year limit when Title VII has such a specific scheme? And we said in Berg, Congress explicitly provides a limitation period in the text of the statute. If it does, that period is definitive. Your Honor, first, Berg is a private sector case, so there was no question of 2401 applying at all. And the starting point here should be 2401 itself. Why shouldn't the starting point be Title VII? Because Session 2401 was passed as part of the Tucker Act far before Title VII. How does that help you? All the more reason to say that Title VII is an explicit, on its own, standalone statutory scheme that governs the limitations period for employment discrimination actions, isn't it? The limitations periods provided in Title VII, and there are a number of them, and those certainly apply. The 90-day period applies, and it's a non-jurisdictional. Ninety days after final agency action. Yes. And we don't have final agency action here. But there's absolutely no conflict here, because Congress didn't provide any time limitation in Title VII itself. They did. They did. We just talked about it. It's 90 days after final agency action. That is a time limit. It's indeterminate. It's contingent. But it is a time limit. And it's something that government controls. Right. So why isn't Congress perfectly free to say, rather than pinning a calendar date or a defined period, we will tie the limitations period to the employer's actions, the government's actions. Why can't Congress make that policy choice? It could if it had clearly stated, either in 2401 or Title VII, that there was a longer time limitation. What's unclear about 90 days after final agency action? It's clear, but it doesn't conflict in any way with having a six-year jurisdictional outer limit. Sure it does. It conflicts right in this very case, because it's beyond six years. So the agency says, oh, you know what, let's not act. Let's not act. And six-year clock comes. They've lost their cause of action. Is that really what Congress intended? Congress intended that the individual gets the process in motion, starts the process, which is what happened here. But then it's up to the government to determine, basically, the time period. And if it wants to not act for eight years, then the statute says until final agency action. And if the person begins their action within 90 days after that eight-year action, that's what the statute says. But it would be anomalous, given the court's decisions in the Age Discrimination Employment Act cases, where also Congress didn't provide any time limitation in the federal sector ADEA cases. Different language, right? But there are other time limits in federal sector ADEA. I mean, there's still ‑‑ How are you not reading the until final agency action in the 90 days? How do you not see that? And I was surprised in your supplemental briefing. You said you acknowledged that language, but then said it really didn't ‑‑ It wasn't controlling it. It didn't mean anything. It means ‑‑ what it means is that Congress does not have any ‑‑ there is no 90-day period. It's like they say that after 180 days, if you don't have a final agency action, the plaintiff is allowed to go to court. That's how Congress provided for the plaintiffs to have rights in these cases where there is delay. Well, the phrase until such time as final agency action may be taken by a department agency indicates Congress did not intend the 90-day time limit to apply until after the final agency decision. It does not follow that Congress intended that no time limit apply. Well, that's a non sequitur. They did intend that a time limit apply, and that time limit is entirely within the control of the government. Entirely within the control. It is not open-ended in any way, shape, or form in terms of the individual, delay, whatever. The government controls that time limit by deciding by final agency action. Your Honor, but if there is a case where the plaintiff is not diligently pursuing his case in the administrative process or by filing, or ‑‑ If he's not pursuing it, presumably the agency will say, hop to, we're deciding this thing. The legislative choice that Congress made in 2401 was that the United States was not going to be subject in court. Now, this doesn't apply to the administrative process. When you say the legislative judgment, you're putting the rabbit in the hat. The question we're trying to figure out is, did Congress mean for 2401A, which it passed, as you noted, a long time before it passed Title VII, did it mean for that somehow to act as a break on Title VII? I guess a reasonable question one might ask is, if they had intended that to be the case, wouldn't they have given a hint about that in Title VII itself? Wouldn't there be something? Oh, by the way, no, and after, until such time, but in no event later than six years? They didn't need to because Section 2401A couldn't be clearer. And the court, it is very hard, the standard for saying that a subsequent federal statute overrules a prior statute is very hard. The specific always trumps the general, doesn't it? The Title VII has not just a statute of limitations, and it's, as you noted, it's got in this 22000E-16C a very elaborate statute of limitations. Why would we look at that, given ordinary canons of construction, and say, yeah, but the little Tucker Act, the Tucker Act from decades previously, that trumps this. Now, I understand you've said, oh, it's not a trumping because they're really not in conflict, but, you know, we've just been going around for the last six minutes about you reading the 90 days after final agency action out of the statute when you apply 2401A, and I still haven't understood how that doesn't create a conflict. Well, Your Honor, there's an additional reason in canon of statutory construction of work here, which is that if Congress has specified exceptions, expressed exceptions, then the court should not imply additional exceptions. And if you look at 2401A, it says, except as provided by Chapter 71 of Title 41, that's the Contracts of Disputes Act. I would understand that if Title VII preceded the enactment of that statute, but it didn't. It followed. So how would they have anticipated, oh, and also we will accept out the Title VII, and we're going to enact 60 years later. But I believe this was added in 1978, and the Contracts of Disputes Act does have its own, you know, it has a certain amount of time where you can present your claim to a contracting officer, and then it specifies that you have 12 months after a final, after receipt of the contract. But see, in Title VII, what they have done is put the burden on the government to act, and then the only burden on the individual is to start the process, and then when the government acts, to have 90 days. I mean, the only numerical aspects of Title VII involving the individual are taking action after certain things have happened, after they've terminated, you need to initiate, and then after final agency action, you need to do something. For us to then say, oh, but obviously they meant, you know, a six-year or a ten-year outside limit, how would Congress really have thought they had to put that in when the provisions require the individual to act within a certain time after agency action? Again, I think that with the backdrop of 2401, which is, and Title VII also includes a waiver of the government's sovereign immunity, and that it seems that Congress, in light of the legislative intent expressed both in 2401 and these extremely much shorter time deadlines in other parts of Title VII and in private sector Title VII, that they wouldn't have, the reasons for the statutes of limitations in general all would apply here if something. You're creating, are you not creating, Ms. Marcus, a catch-22? Why don't you, your colleague, Ms. Cohen, in her letter to us of the 14th, says in the first full paragraph on page 2 that if an administrative law judge were to render a decision adverse to a complainant and you were close to your six-year period there, you'd be in a position where you'd either have to go to court or be held time-barred, but if you did go to court, you'd be held to have failed to have exhausted your administrative remedies. Now, that seems to me to be a pretty compelling hypothetical. I'm sorry, this is when you already have a final action? You've got a decision, you've filed your complaint, and you're within six months of the six-year statute of limitations running, so you are in a position where you either immediately appeal so that you beat the, I mean, you immediately go to court, file your lawsuit so that you beat the six-year statute of limitations, or you stick around and wait out your 180 days the way the statute requires, and you lose on the statute. Do you understand the hypothetical? Well, there you, I mean, first of all, you certainly can just go to court at that time. No, you couldn't because you would have failed to exhaust. Oh, no, no, you wouldn't have because you have a final agency decision. You don't have a final. It's got the appeal to the BIA. You mean appeal to the, well, first of all, there is a Ninth Circuit case, a recent Ninth Circuit case in which the EAC is the defendant. The government took the position in that case, and the Ninth Circuit agreed that the appeal part is optional, and so if you withdraw your appeal, you can. But that's not what Congress wanted. Congress wanted this scheme to proceed through the final agency action. But there is also an interest in finality and not having stale claims and having. . . But finality, you have the administrative, and then you come, you initiate a lawsuit in the court and forego your appeal? How does that promote finality? There's an interest in the judicial system not having, you know, the agency not having to defend against these stale claims. It doesn't keep the plaintiff from pursuing his claims administratively. He just has to make a decision when the six years is coming up, whether he wants to go to court. Whose fault is it that it's stale? But he can stay in the administrative process. Who's fault is it that it's been taken six years? Well, it's not the defendants in this case, but I understand that the EAC is part of the federal government, and it's not the defendant agency's fault either. But it's the U.S. government. But there's been a decision. Sometimes that's how these jurisdictional statute of limitations work, and 2401A, and that's connected to our whole argument about it being a jurisdictional statute of limitations. And so if the court holds that the argument is not waived, that it doesn't apply to Title VII and agrees with us that it does apply here, we rely on our briefs for the arguments about why it's jurisdictional. And we also, again, suggest that the court can also affirm on the alternative grounds of the settlement. Thank you very much. Thank you. Ms. Cohen? Thank you. I'd like to draw the court's attention on the issue you were asking me about before regarding the June 2, 1999 deadline. We have thoroughly briefed that issue in appellant's brief, I believe, brief pages 14 ad infinitum. But my argument is – It's one page, so I wouldn't call it ad infinitum, but that's okay. Some of the briefing goes on ad infinitum. But that question, I believe, was also considered at length by the EEOC, which is a government agency, which if they believe that the court's decision precluded them from accepting the complaint and pursuing it, could have denied that complaint. In fact, it was sent back one or two times to Mr. Canicle saying, this is an old complaint. It has been considered. You waived it. They then were apparently convinced by Mr. Canicle or his counsel at the time to accept the claim for one reason or another. And so I feel to go back and argue the waiver issue is moot to a certain extent because that was considered by EEOC, and now we are several years into the future, probably ten years into the future. So that's my one point on that. But the main issue is, was it a prospective waiver of his rights to file a civil rights complaint or proceed with it? And I do not feel a last chance agreement takes that into consideration when you go to court. You're arguing a whole different area of the law. That's the one issue. The second issue is EEOC never, ever mentions a six-year statute in its letters to claimants, in its right to sue letter if you actually receive one or request one at a certain period of time. This is just a very foreign concept that 2401 would apply to the Civil Rights Act. It's amazing this hasn't been litigated before either. It hasn't been litigated, but if it was litigated and it was decided it would apply, it would open the floodgates to people who have been involved in the EEOC process for six, seven, eight, nine, ten years. They'd all be running to court. They would. And Congress did not intend that they would run to court. And you can't just run to court with a civil rights claim. It costs well over $100,000 to pursue it from the plaintiff's perspective, and that doesn't count what the government is paying to defend it. But even so, it would be ridiculous, and I'm glad Judge Jordan understood and took the time to consider our arguments. The results would be ridiculous. And if a person came to court, the district court judge would say, well, what are you doing here? You're waiting for your administrative law judge decision. Do we have to start this case all over again, take up the court's time, and we have full dockets? It's ridiculous. So whether you win as a claimant at the EEOC process or whether you lose, you have appeal rights and the government has appeal rights, and the six-year statute does not take that into consideration. All right. Thank you very much. Thank you. Thank you. Cases well argued, we'll take it under advisement.